# Doster & McKibben, Plaintiffs in Error, v. Michigan Central Railroad Company, Defendant in Error.

## Gen. No. 20,275.

1. CARRIERS, § 30*—*when duties and responsibilities of carriers governed by acts of Congress.* The duties and responsibilities of common carriers of interstate shipments are to be determined wholly by the acts of Congress and the interpretations thereof by the Federal Courts.

2. CARRIERS, § 33a*—*what is purpose of act as relating to rates.* Sections 2, 6, and 10 of the Interstate Commerce Act, as amended by Act of February 19, 1903, and Act of June 20, 1905, pertain only to the matter of *rates, fares* and *charges,* and prohibit any preference or discrimination *in that regard,* their broad purpose being to compel the establishment of reasonable rates and the uniform application thereof.

3. CARRIERS, § 33a*—*when carrier cannot waive provision in contract relating to rates.* Under the Interstate Commerce Act and its amendments a carrier cannot waive any provision in the contract under which the goods in question were transported which was determinative of the rate established for such transportation, for the reason that otherwise it would be within the power of the carrier to violate the law.

4. CARRIERS, § 160*—*when liability of carrier may be limited by special contract.* Under the Interstate Commerce Act and its amendments, the liability of the carrier may be limited by special contract without violation of the act, provided such limitation be just

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

50        APPELLATE COURTS OF ILLINOIS.

Doster et al. v. Mich. Cent. R. Co., 196 Ill. App. 49.

and reasonable and does not exempt the carrier from liability due to negligence.

5. CARRIERS, § 177a*—*when effect of waiver of provision requiring notice of damages of shipper cannot be evaded.* The Interstate Commerce Act, with its amendments, was not intended to apply to conditions in the contract between the carrier and the shipper which are not determinative of the rate established, or to enable the carrier to obtain advantages over the shipper in regard to such matters not possessed before the passage of the act, so that the mere fact that the contract in question was on a form filed with the Interstate Commerce Commission into which the carrier had incorporated provisions not determinative of the rate established would not enable the carrier to evade the effect of a waiver of a provision in the contract requiring the shipper to give notice to the carrier within a named time of any claim for damages under the contract, although the provisions incorporated into the form of contract so filed expressly state that a lower rate is given in consideration of the special provisions of the contract than would have been given without such provisions, especially where such incorporated provisions also expressly state the provisions of the contract which determined the lower rate, from which it may be reasonably presumed that all provisions in the contract other than those expressly stated would be contained in a contract based on the higher rate.

6. CARRIERS, § 218*—*what does not constitute preference or discrimination within Interstate Commerce Act.* Under the Interstate Commerce Act and its amendments, the fact that the carrier might pay on its merits a claim for liability growing out of negligence in one instance, and might in another instance refuse to pay on its merits such a claim made by another shipper, would not constitute an act of preference or discrimination within the meaning of the act, where it appeared from the contract with the shipper whose claim was paid that the provision waived did not affect the rate established.

7. CARRIERS, § 185*—*when provisions of interstate contract may be waived by carrier.* Under the Interstate Commerce Act and its amendments, provisions intended for the sole benefit of the carrier may be waived where such provisions are not determinative of the rate established.

8. CARRIERS, § 241*—*when provision in contract limiting time within which claim for damages may be filed may be waived.* In an action to recover damages for the negligent transportation of stock in interstate commerce, under a contract providing that any claim for damages thereunder must be presented to the carrier within a

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

stated time, the refusal of the trial court to hold as a proposition of law that under the Interstate Commerce Act and its amendments such provision might be waived, *held* erroneous.

Error to the Municipal Court of Chicago; the Hon. WILLIAM N. GEMMILL, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1914. Reversed and remanded. Opinion filed December 22, 1915.

E. L. GAREY, ARCHIE J. DEUTSCHMAN, FRANK D. FULTON and JOHN M. RANKIN, for plaintiffs in error.

WINSTON, PAYNE, STRAWN & SHAW, for defendant in error.

MR. PRESIDING JUSTICE SCANLAN delivered the opinion of the court.

The plaintiffs in error, hereinafter called the plaintiffs, brought an action of the fourth class in the Municipal Court of Chicago against the defendant in error, hereinafter called the defendant, to recover damages for alleged negligence.

A carload of sheep, the property of the plaintiffs, was delivered by them to the C., K. & S. Ry. Co., at Delton, Michigan, on February 9, 1911, to be transported to Union Stock Yards, Chicago, Illinois. The said railway company carried the car from Delton to Kalamazoo, Michigan, and there delivered it to the defendant, on February 9, 1911, and the latter transported the car to its destination. The negligence alleged in the plaintiffs' amended statement of claim was a failure to transport the sheep within a reasonable time, a failure to handle the same in a proper manner, and a failure to handle the same in a proper car, from Kalamazoo to its destination. The defendant, in its affidavit of merits, specifically denied the said acts of negligence and alleged that the shipment was handled under the provisions of a written contract between the plaintiffs and the said C., K. & S. Ry. Co., by the terms of which the defendant is released from liability for the alleged damages. The plaintiffs filed

an amendment to their amended statement of claim in which they alleged that the said written contract contained a provision that, unless a claim for loss or damage be made in writing within five days from the time the stock is removed from the car, no claim should be allowed or paid by the carrier, or sued for in any court by the plaintiffs; that plaintiffs did not, within five days, present their claim, but that in February, 1911, the plaintiffs delivered a claim in writing to the defendant, and that "said defendant considered said claim without objection as to the matter of filing, and declined said claim on its merits, thereby waiving said provision."

The case was tried before the court and a jury and at the close of the plaintiff's case, the court, on motion of the defendant, instructed the jury to find the defendant not guilty. Judgment followed and the plaintiffs have sued out this writ of error to review the same.

On the trial it was stipulated that the defendant failed to transport the car of sheep within a reasonable time, and that the plaintiffs were damaged thereby; that the plaintiffs presented a claim in writing to the defendant on February 21, 1911, and that the latter duly acknowledged the receipt of the same and thereafter investigated the claim on its merits; that on April 17, 1911, the defendant wrote to the agent of the plaintiffs a letter, admitting a slight delay in the transportation of the stock and offering to pay the plaintiff "five dollars extra feeding charges which were incurred on account of the stock not arriving earlier, but this is positively the extent of our liability, and the feeding of the stock should make up any shrink which may have occurred. If you will kindly amend your claim to $5, I will at once draw draft in your favor. J. M. Eedson, F. C. A."; that thereafter the defendant wrote to the plaintiff as follows:

"Replying to your favor of March 19th, our review of the claim file shows that there was no negligence

which would call for our assuming liability in this claim, hence my proposition of April 17th, requesting the claim amended to $5.00 extra feeding charges is withdrawn, and the claim is declined outright'';
and that the defendant did not make any point as to the five-day claim limitation clause in the contract during the negotiations for a settlement of the ·claim.

The said written contract, called a "Live Stock Contract," contained the following provisions:

*"That said shipper or the consignee is to pay freight thereon to the said carrier at the rate of 13 cts. per cwt., which is the lower published tariff rate based upon the express condition that the carrier assumes liability on the said Live Stock to the extent only of the following AGREED VALUATION, UPON WHICH VALUATION IS BASED THE RATE CHARGED FOR THE TRANSPORTATION OF THE SAID ANIMALS, and beyond which valuation neither the said carrier nor any connecting carrier shall be liable in any event, whether the loss or damage occur through the negligence of the said carrier or connecting carriers, or their employes or otherwise.*

*"If Horses or Mules—not exceeding One Hundred Dollars Each.*

*If Cattle or Cows—not exceeding Seventy-five Dollars each.*

*If Fat Hogs or Fat Calves—not exceeding Fifteen Dollars each.*

*If Sheep, Lambs, Stock Hogs, Stock Calves, or other small animals—not exceeding Five Dollars each.*

*And in no event shall the carrier's liability exceed $1,200 upon any car·load.*   (Italics ours; capitals not ours.)

"That said shipper is to pay all back charges and freight paid by said carrier or connecting carrier upon or for the transportation of said Live Stock.

"That the said shipper is at his own sole risk and expense, to load and take care of and to feed and water said stock whilst being transported, whether delayed in transit or otherwise, and to unload same; and neither

said carrier nor any connecting carrier is to be under any liability or duty with reference thereto, except in the actual transportation of the same.

"That the said shipper is to inspect the body of the car or cars in which said stock is to be transported, and satisfy himself that they are sufficient and safe and in proper order and condition, and said carrier or any connecting carrier shall not be liable on account of any loss of or injury to said stock happening by reason of any alleged insufficiency in or defective condition of the body of said car or cars.

"That said shipper shall see that all doors and openings in said car are at all times so closed and fastened as to prevent the escape therefrom of any of the said stock, and said carrier or connecting carrier shall not be liable on account of the escape of any of said stock from said car or cars.

"The said carrier or any connecting carrier shall not be liable for or on account of any injury sustained by said Live Stock occasioned by any or either of the following causes, to-wit: Overloading, crowding one upon another, kicking or goring, suffocating, fright, burning of hay or straw or other material used for feeding or bedding, or by fire from any cause whatever, or by heat, cold, or by changes in weather, or for delay caused by stress of weather, by obstruction of track, by riots, strikes, or stoppage of labor or from causes beyond their control.

"That in the event of any unusual delay or detention of said Live Stock caused by the negligence of the said carrier, or its employes, or its connecting carriers, or their employes, or otherwise, the said shipper agrees to accept, as full compensation for all loss or damage sustained thereby, the amount actually expended by said shipper in the purchase of food and water for the said stock while so detained. That no claim for damages which may accrue to the said shipper under this contract shall be allowed or paid by the said carrier, or sued for in any court by the said shipper, unless a claim for such loss or damage shall be made in writing, verified by the affidavit of the said shipper or his agent,

and delivered to the General Freight Agent of the said carrier at his office in the city of          within five days from the time said stock is removed from said car or cars; and that, if any loss or damage occurs upon the line of a connecting carrier, then such carrier shall not be liable unless a claim shall be made in like manner and delivered in like time to some proper officer or agent of the carrier on whose line the loss or injury occurs.

"That whenever the person or persons accompanying said stock under this contract, to take care of the same, shall leave the caboose and pass over or along the cars or track of said carrier, or of connecting carriers, they shall do so at their own sole risk of personal injury from whatever cause, and neither the said carrier nor its connecting carriers shall be required to stop or start their trains or caboose cars at or from the depots or platforms, or to furnish lights for the accommodation or safety of the persons accompanying said stock, or to take care of the same under this contract.

"And it is further agreed by said shipper that, in consideration of the premises and of the carriage of a person or persons in charge of said stock upon a freight train of said carrier or its connecting carriers without charge other than the sum paid or to be paid for the transportation of the Live Stock in charge of which he is, that the said shipper shall and will indemnify and save harmless said carrier and every connecting carrier from all claims, liabilities and demands of every kind, nature and description, by reason of personal injury sustained by said person or persons so in charge of said stock, whether the same be caused by the negligence of said carrier or any connecting carrier or of any of its employes or otherwise.

"And Doster & McKibbin do hereby acknowledge that they had the option of shipping the above described Live Stock at a higher rate of freight according to the official tariffs, classifications and rules of the said carrier and connecting carriers, and thereby receiving the security of the liability of the said carrier

and connecting railroad and transportation companies as common carriers of the said Live Stock upon their respective roads and lines, but have voluntarily decided to ship same under this contract at the reduced rate of freight above first mentioned. (See back for Release of Man in Charge.)''

On the back of the contract appears the following:

''RELEASE FOR MAN OR MEN IN CHARGE

''In consideration of the carriage of the undersigned upon a freight train of the carrier or carriers named in the within contract without charge, other than the sum paid or to be paid for the carriage upon said, freight train of the Live Stock mentioned in said contract, of which Live Stock................ in charge,
                              (I am or we are)
the undersigned do........hereby voluntarily assume
                    (Does or do)
all risk of accidents or damage to..............person
                              (His or their)
or property, and do..........hereby release and dis-
                    (Does or do)
charge the said carrier or carriers from every and all claims, liabilities and demands of every kind, nature and description for or on account of any personal injury or damage of any kind sustained by the undersigned so in charge of said stock, whether the same be caused by the negligence of said carrier or carriers or any of its or their employes or otherwise.''

The defendant's motion for a directed verdict in its favor was predicated solely on the ground that the plaintiffs had not filed a claim in writing verified by an affidavit within the five-day period designated. in the contract. When the motion was made the plaintiffs submitted to the court (*inter alia*) the following propositions of law:

''1. The five-day claim limitation in defendants' limited liability live stock contract is, as a matter of law, unreasonable and not a valid bar to plaintiffs' right of action.

"2. That the question of whether or not the five-day limitation of claim provision was a reasonable clause was a question of fact for the jury.

"3. That such provision, if a reasonable provision, could be waived by the defendant.

"4. That such provision, if a reasonable provision, was waived by the defendant in this case, by negotiating with plaintiffs and considering plaintiffs' claim on its merits and constituted no valid bar to plaintiffs' action.

"5. That defendant having given a reason for its conduct and decision, in the letters written agents of plaintiffs, could not after this action was begun, change its ground, and put its conduct upon another and different consideration, to-wit: the failure on the part of the plaintiffs to file claim within five days, as provided in the limited liability live stock contract.

"6. That the five-day claim limitation clause in the live stock contract is a contract, rule, or regulation forbidden by the 20th Section of the Act to Regulate Commerce, as amended by the Act of June 29, 1906, known as the Carmack Amendment thereto. (34th Statutes at Large, page 593, Chapter 3591.)"

The trial court determined these propositions of law against the plaintiffs and held "that the five-day claim limitation in the defendant's limited liability live stock contract was, as a matter of law, reasonable, and a valid bar to the plaintiffs' right of action; * * * that said provision could not be waived by the defendant; that the defendant could change its ground and put its conduct upon another and different consideration, to wit, the failure on the part of the plaintiffs to file their claim within five days as provided in the limited liability live stock contract, after having given as a reason for its conduct and decision in the letters written agents of the plaintiffs, before this action was begun; * * * further that said plaintiffs were barred by such clause from any right of action."

The plaintiffs first contend that the five-day claim limitation clause in the contract is void, for the reason

that it "is a contract, rule, or regulation forbidden by the 20th section of the Act to Regulate Commerce, as amended by the Act of June 29, 1906, known as the Carmack Amendment thereto." On the oral argument of this case, the counsel for the plaintiffs conceded that the decision of the Supreme Court of the United States in the case of *Adams Exp. Co. v. Croninger,* 226 U. S. 491, is adverse to this contention.

Plaintiffs further contend that even if it be held that the time notice provision in the contract is not void, still it was one that "could be and was waived by the defendant in accepting the claim after the five-day expiration and negotiating within the plaintiffs and considering the plaintiffs' claim on its merits and constituted no valid bar to the plaintiffs' action." We have been referred to numerous authorities in support of this last contention. The defendant contends that "the cases which counsel for the plaintiffs cite in their brief as sustaining their contention that this provision was waived, are all cases from State courts or cases in the Federal Courts which arose prior to the amendments to the Interstate Commerce Act prohibiting discriminations and preferences between shippers. * * * Whatever may have been the law prior to the passage of the Interstate Commerce Act as to the right of a common carrier to waive such provisions in its shipping contracts, since the new act has governed interstate transportation no such right exists"; that there was not and could not be any waiver of a compliance with the conditions of said clause by the defendant. A waiver would constitute a preference and a discrimination expressly forbidden by the Act to Regulate Commerce."

The duties and responsibilities of common carriers of interstate shipments are to be found wholly within the acts of Congress and the interpretations of the same by the Federal Courts. *Adams Exp. Co. v. Croninger, supra.*

In support of its position that a waiver of the provision in question would constitute a preference and a discrimination, expressly forbidden by the Act to Regulate Commerce, the defendant cites certain provisions of the act to which we will now refer.

Section 2 of the Act (3 Comp. Stat. U. S., p. 3155) prohibits and declares it to be unlawful for a carrier to charge a greater or less compensation for service rendered or to be rendered in the transportation of passengers or property, than it charges or receives from any person for a like and contemporaneous service in the transportation of a like kind of traffic, under substantially similar circumstances and conditions. Section 6 (ibid., p. 3156) provides for the making and publication of schedules showing the rates, fares and charges for the transportation of passengers and property; and also (ibid., p. 3157) for the establishing, where passengers and freight pass over continuous lines or routes operated by more than one carrier, of joint tariffs, showing rates, fares and charges for such continuous lines or routes, and also provides:

"And when any such common carrier shall have established and published its rates, fares and charges in compliance with the provisions of this section, it shall be unlawful for such common carrier to charge, demand, collect, or receive from any person or persons a greater or less compensation for the transportation of passengers or property, or for any services in connection therewith, than is specified in such published schedule of rates, fares and charges as may at the time be in force." (p. 3157.)

"It shall be unlawful for any common carrier, party to any joint tariff, to charge, demand, collect or receive from any person or persons a greater or less compensation for the transportation of persons or property, or for any services in connection therewith, between any points as to which a joint rate, fare or charge is named thereon than is specified in the schedule filed with the commission in force at the time." (p. 3158.)

Section 10 (ibid., pp. 3160, 3161) provides:

"Any person and any officer or agent of any corporation or company * * * who shall knowingly and wilfully, by false billing, false classification, false weighing, false representation of the contents of the package, or false report of weight, or by any other device or means, whether with or without the consent or connivance of the carrier, its agent or agents, obtain transportation for such property at less than the regular rates then established and in force on the line of transportation, shall be deemed guilty of fraud, which is hereby declared to be a misdemeanor," etc.

The amendatory Act of February 19, 1903 (U. S. Comp. St. Supp. of 1903, p. 363), provides (page 364):

"It shall be unlawful for any person, persons or corporation to offer, grant, or give, or to solicit, accept, or receive any rebate, concession, or discrimination in respect of the transportation of any property in interstate or foreign commerce by any common carrier subject to said Act to Regulate Commerce and the acts amendatory thereto whereby any such property shall by any device whatever be transported at a less rate than that named in the tariffs published and filed by such carrier, as is required by said Act to Regulate Commerce and the acts amendatory thereto, or whereby any other advantage is given or discrimination is practiced."

The act of June 29, 1906 (Pub. Acts, No. 357; Supp. of 1909; U. S. Comp. Stat., p. 1155), provides:

"Nor shall any carrier refund or remit in any manner or by any device any portion of the rates, fares, and charges so specified, nor extend to any shipper or person any privileges or facilities in the transportation of passengers or property, except such as are specified in such tariffs."

All of these provisions pertain only to the matter of *rates, fares and charges,* and they prohibit any preference or discrimination *in that regard.* In *Texas & P. Ry. Co. v. Abilene Cotton Oil Co.,* 204 U. S. 426, it was said: "The act made it the duty of carriers subject

to its provisions to charge only just and reasonable rates. To that end the duty was imposed of establishing and publishing schedules of such rates. It forbade all unjust preferences and discriminations, made it unlawful to depart from the rates in the established schedules until the same were changed as authorized by the act.''

In *Chicago & A. R. Co. v. Kirby,* 225 U. S. 155, it was said that it was the purpose of Congress ''to require that all shippers should be treated alike, and that the only rate charged to any shipper for the same service under the same conditions should be the one established, published, and posted as required by law. It is not so much the particular form by which or the motive for which this purpose was accomplished, but the intention was to prohibit any and all means that might be resorted to to obtain or receive concessions and rebates from the fixed rates, duly posted and published.'' The broad purpose of the commerce act was to compel the establishment of reasonable rates and their uniform application.'' To the same effect is *Armour Packing Co. v. United States,* 209 U. S. 57.

We think it can be said that whenever the Supreme Court of the United States has had occasion to pass upon the meaning and scope of the act in question, it has held that the purpose of the law was to prevent preference or discriminations in the matter of rates, fares and charges.

It is plain that the defendant could not waive any provision in the present contract that was determinative of the rate established. If it were otherwise, a carrier would have it in its power to nullify the law.

In our judgment, the vital question for us to determine in the present case is, was the notice clause in the contract determinative of the rate established?

The claim of the plaintiffs is for damages growing out of the negligence of the defendant in the transportation of the stock. There is no dispute between the

62    APPELLATE COURTS OF ILLINOIS.

Doster et al. v. Mich. Cent. R. Co., 196 Ill. App. 49.

parties as to rates, and there is no suggestion that they are attempting in any way to evade the law in question.

As we read the contract, the plaintiff received the benefit of the lower tariff rate established therein, solely because they agreed, that for any loss or damage to the stock, that they might suffer through the negligence of the defendant, or connecting carriers, the carrier assumed liability to the extent only of the agreed valuation of the stock. It has been held that the carrier's liability in that regard may be limited or qualified by special contract with the shipper, without violating the act in question, provided the limitation or qualification be just and reasonable and does not exempt the carrier from loss or liability due to negligence. *Adams Exp. Co. v. Croninger, supra; Missouri, K. & T. Ry. Co. v. Harriman Bros.,* 227 U. S. 657.

The defendant argues that the "Live Stock Contract" was incorporated and published as a part of its published tariffs and schedules in accordance with the provisions of the act; that thereby the lower rate mentioned in the contract was offered only to shippers who accepted the contract in its entirety; that the plaintiffs, by accepting the contract in its entirety, thereby received the benefit of the lower rate, and that the defendant is bound under the act to maintain and enforce all conditions and regulations contained in the contract; that as the plaintiffs failed to comply with the provision in reference to the notice of loss, the defendant cannot waive the said provision without violating the act.

We do not think that the act was intended to apply to conditions in a contract between a carrier and a shipper that are not determinative of the rate established. If the defendant is right in its present contention, it would follow that it could not waive any of the many provisions and regulations in the present contract. It is obvious that serious and injurious consequences to shippers would result, if the contention of

the defendant should prevail. The act was certainly not passed for the purpose of enabling carriers to obtain advantages over shippers in the matter of conditions or regulations in contracts that are not determinative of the rate established, that they did not have before the passage of the law. The mere fact that the defendant incorporated into the "Live Stock Contract" form, that was filed with the Interstate Commerce Commission, provisions that were not determinative of the rate established, would not, in our judgment, give to the defendant, in the matter of the said provisions, the new advantage over the shipper, of being able to evade the effect of a waiver by the carrier of the said provisions. The contract so filed expressly stated the provision that determined the lower rate, and it is reasonable to presume that all other provisions in the contract would be contained in a contract based upon the regular rate. Nor are we able to see how the fact that the carrier might accept and pay, on its merits, a claim of one shipper growing out of alleged negligence, and at the same time refuse to accept and pay, on its merits, a like claim of another shipper (neither having presented his claim within the time limited by his contract for transportation) would constitute an act of preference or discrimination within the meaning of the act, where it appeared from the contract of the party whose claim was accepted and paid, that the provision waived did not in any way affect the rate established.

In support of its contention that it would be a violation of the act in question for the railroad company to waive the five-day claim limitation clause, the defendant cites *Clegg v. St. Louis & S. F. R. Co.* (122 C. C. A. 273), 203 Fed. 971; *Kidwell v. Oregon Short Line R. Co.* (125 C. C. A. 313), 208 Fed. 1; *Davenport v. Chesapeake & O. Ry. Co.* (87 Misc. [N. Y.] 303), 149 N. Y. Supp. 865. We find nothing in the first two cases that supports the defendant's contention. In fact, we

think that these cases, by strong inference, at least, are adverse to defendant's contention. In the third case cited, practically no facts are stated in the opinion, and it is impossible to tell whether the time limit clause in the contract that was before the court was determinative of the rate established. If it were, an entirely different question from the one now before us was presented. The court in that case decided that the facts did not establish a waiver, and it expressed a doubt as to whether the carrier had the power to waive the time limit provision for the reason that the form of the bill of lading under which the shipment was made had been approved by the Interstate Commerce Commission.

The following cases hold that it would not be a violation of the act for a carrier to waive a provision like the one in question: *Donohoo Horse & Mule Co. v. Missouri, K. & T. Ry. Co.* (95 Kan. 681), 149 Pac. 436; *Crawford v. Southern Ry. Co.* (S. C.), 86 S. E. Rep. 19; *Clingan v. Cleveland, C., C. & St. L. Ry. Co.,* 184 Ill. App. 202.

The stipulation as to notice was for the sole benefit of the carrier, and before the passage of the act the courts repeatedly held that similar provisions could be waived, and as the present one was not determinative of the rate in the contract, we fail to see any good reason for holding that it would be a violation of the act for the defendant to waive the same. We think the conclusion we have reached is entirely in harmony with the reasoning of the court in *Boston & M. R. R. v. Hooker,* 233 U. S. 97.

There was evidence introduced tending to show a waiver of the five-day claim limitation clause by the defendant, and if we are correct in the conclusions that we have expressed as to the right of the defendant to waive the same, it follows that the trial court erred in refusing to hold the proposition of law submitted by the plaintiffs, to the effect that the said clause could be waived by the defendant, and in directing a verdict for

the defendant. The judgment of the Municipal Court of Chicago must therefore be reversed and the cause remanded.

*Reversed and remanded.*